+      **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No.  09-cv-02817-REB-MEH

JUSTIN JOSEPH RUEB,

      Plaintiff,

v.

ARISTEDES ZAVARAS,
SUSAN JONES,
EUGENE ATHERTON,
ROBERT ALLEN,
C. BARR,
DENNIS BURBANK,
ANTHONY DECESARO,
JIM GENTILE,
SUE GRISENTI,
M. HILDEBRAND,
CARL HOLDITCH,
C. MAY,
DONICE NEAL,
R. OLIVETT,
LARRY REID,
WILLIAM RICHTER,
C. ROY,
KEN SALAZAR,
JOHN SUTHERS,
G. VENDETTI,
D. WILLIAMS, and
H. WILLIAMS,

      Defendants.

---

### ORDER RE: DEFENDANTS' MOTION TO DISMISS

---

**Blackburn, J.**

      The matter before me **Defendants' Motion to Dismiss Plaintiff's Amended**

**Complaint (Doc. 24)** [#51][1] filed April 21, 2010.[2]  With the consent of the magistrate judge, I withdraw the **Reference** [#53] filed April 22, 2010, determine the merits directly.  I grant the motion in part and deny it in part.

## I.  JURISDICTION

I putatively have jurisdiction over this case pursuant to 28 U.S.C. § 1343(a)(4) (civil rights actions).

## II.  STANDARD OF REVIEW

A motion to dismiss for lack of standing implicates the court's subject matter jurisdiction, and, therefore, is construed pursuant to Fed. R. Civ. P. 12(b)(1).  **See New Mexicans for Bill Richardson v. Gonzales**, 64 F.3d 1495, 1498-99 (10th Cir. 1995). A12(b)(1) motion may consist of either a facial or a factual attack on the complaint.  **Holt v. United States**, 46 F.3d 1000, 1002 (10th Cir. 1995).  A facial attack, like that mounted here, challenges the sufficiency of the complaint's allegations of subject matter jurisdiction. **Id**.  In reviewing such a motion, I must accept the allegations of the complaint as true.  **Id**. Plaintiff bears the burden of establishing that subject matter jurisdiction exists.  **Henry v. Office of Thrift Supervision**, 43 F.3d 507, 512 (10th Cir. 1994); **Fritz v. Colorado**, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).  "'[The] motion must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.'"  **Fritz**, 223 F.Supp.2d at 1199 (quoting **Groundhog v. Keeler**, 442 F.2d 674, 677 (10th Cir. 1971)).

---

[1] "[#51]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] The motion is filed by all defendants except for those who have not yet been served, namely Neal (**see Summons** [#94], filed July 8, 2010)), and Suthers and Salazar (**see Waiver of Service** at 2 [#26], filed March 1, 2010).

Defendants' motion implicates also Fed. R. Civ. P. 12(b)(6), which requires the allegations of the Amended Complaint to be sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a).[3]  I must accept all well-pleaded allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 123 S.Ct. 1908 (2003).

I review plaintiff's Amended Complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphases in original).[4]  Nevertheless, the standard remains a liberal one, and "a

---

[3]  A motion to dismiss on the ground that a claim is barred by limitations is reviewed under Rule 12(b)(6) because a statute of limitations defense is not jurisdictional. *Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 1681, 164 L.Ed.2d 376 (2006); *Marten v. Godwin*, 2009 WL 2475257 at *2 n.8 (D. Kan. Aug. 12, 2009).

[4]  *Twombly* rejected and supplanted the "no set of facts" language of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." **Dias v. City and County of Denver**, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting **Twombly**, 127 S.Ct. at 1965) (internal quotation marks omitted).

Moreover, because plaintiff is proceeding *pro se*, I have construed his pleadings more liberally and held them to a less stringent standard than formal pleadings drafted by lawyers. **See Erickson v. Pardus**, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); **Andrews v. Heaton**, 483 F.3d 1070, 1076 (10th Cir. 2007); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing **Haines v. Kerner**, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972)). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," **Hall**, 935 F.2d at 1110, and I, therefore, will not infer facts not pleaded in the Amended Complaint or give the pleadings a tortured reading in order to make out a plausible claim on plaintiff's behalf. **See Whitney v. State of New Mexico**, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### III. ANALYSIS

Plaintiff is a state prisoner incarcerated in the Colorado Department of Corrections ("CDOC") facility at Sterling, Colorado. His *pro se* Amended Complaint asserts, inclusive of subparts, a total of 46 claims for relief based on alleged violations of his First and

---

This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

**Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting **Twombly**, 127 S.Ct. at 1974; internal citations and footnote omitted).

Fourteenth Amendment rights.[5]  Those defendants that have been served (**see supra** note

1) have moved to dismiss, asserting, *inter alia*, that plaintiff lacks standing to bring claims

on behalf of other prisoners and/or generalized grievances, that many of his other claims

are barred by limitations, that he otherwise fails to state cognizable claims pursuant to Fed.

R. Civ. P. 12(b)(6), and that defendants are entitled to qualified immunity as to all claims

in any event.   After careful review of the record, the briefs, and the applicable law, I

conclude that the majority of plaintiff's claims, indeed, should be dismissed, as summarized

below:

> (1)    Plaintiff fails to allege an injury-in-fact as to
> Claims 5, 5(a), 6(a), 6(b), 6(d), 7, 7(a), 7(f), 8, 9,
> 10, 11, 11(b), 13, 14, 16, and 18.  These claims
> constitute nothing more than generalized
> grievances, as to which plaintiff has failed to
> demonstrate constitutional or prudential
> standing;
>
> (2)    Section 1983 does not provide a cause of action
> to assert claims under the Colorado Constitution,
> as attempted in Claims 2, 4, 6(c), 7, 7(b), 7(e),

---

[5]  These include challenges to

1.    The lack of email access for CDOC prisoners;
2.    The general lack of Internet access for CDOC prisoners;
3.    "Code of penal discipline" hearings, including a claim of conspiracy between certain defendants;
4.    CDOC property restrictions generally;
5.    Limitations on "personal book ownership";
6.    Limitations on "magazine subscription amount limit";
7.    A "ban on 'back issue' magazines, commercially made photographs, and annual calendars from vendors";
8.    Limitations on access to video games and corresponding equipment, including the limitation on violent and/or sexually explicit video games;
9.    A "ban on personal photograph taking";
10.   A "ban on radios and other music playing devices";
11.   A "ban on hard-core sexually explicit" pornographic materials;
12.   CDOC "movie viewing restrictions," including a subsumed claim of retaliation;
13.   CDOC "television channel censorship";
14.   A ban on "Dungeons & Dragons" materials; and
15.   A ban of magazines regarding firearms and illegal drugs, including *High Times*, *Guns & Ammo*, and *Handgun*.

7(g), 7(h), 8(a), 9(a), 10(a), 10(b), 11(a), 11(c), 12(a), 13(a), 14(a), 15(a), 16(a), and 16(b);

(3)    Claims 3, 7(c), 7(d), and 12 are barred by limitations; and

(4)    Claims 1, 6, 15, 15(b), and 17 each fails to state a claim as a matter of law, and amendment would be futile.

Accordingly, the motion to dismiss will be granted, except insofar as it pertains to Claim 5(b), as to which plaintiff will be afforded the opportunity to amend.

### A.    Standing

Article III, section 2 of the United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Carolina Casualty Insurance Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005). As one of the various justiciability doctrines, the requirement of standing ensures that federal courts address only concrete disputes between parties with present, adverse interests. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

Federal courts must consider "both constitutional limits on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Constitutional standing is adequately pleaded where the plaintiff has "allege[d] . . . that [he has] suffered an 'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendants, and that it is redressable by a favorable decision." *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)), *cert. denied*, 127 S.Ct. 1254 (2007). Even where the constitutional minima of standing are met, the court also must consider prudential

limitations on standing, namely that

> (1) a plaintiff must assert his own rights, not those of third parties; (2) the plaintiff's claim cannot be a general grievance shared equally and generally by all or a large class of citizens; and (3) the plaintiff's injury must be within the zone of interests the statute or common law claim intends to protect.

*Jordan v. Pugh*, 504 F.Supp.2d 1109, 1116 (D. Colo. 2007) (citing *Board of County Commissioners of Sweetwater County v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002)).  As to the claims described below, the Amended Complaint fails to assert facts sufficient to establish either aspect of standing, and those claims must be dismissed.

An injury in fact, as required to establish constitutional standing, "is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical." *Lujan*, 112 S.Ct. at 2136 (citations and internal quotation marks omitted).  Although plaintiff alleges facts showing an actual deprivation personal to him as to some of the claims set forth in the Amended Complaint,[6] Claims 5, 5(a), 6(a), 6(b), 6(d), 7, 7(a), 7(f), 8, 9, 10, 11, 11(b), 13, 14, 16, and 18 do not describe any injury in fact to plaintiff himself.  Instead, these claims constitute generalized grievances against certain Colorado Department of Corrections ("CDOC") regulations.

Plaintiff is of the opinion that because he, as a prisoner in the CDOC system, must live under these regulations, he should not be required to actually violate the policies or restrictions challenged here in order to have standing.  In this, he is simply mistaken.  "[A] main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." *Morgan v. McCotter*, 365 F.3d 882, 888 (10th Cir. 2004).  When a plaintiff relies on the threat rather

---

[6] Specifically, Claims 1, 5(b), 7(c), 7(d), 12, 15, 15(b), and 17.

than the fact of injury, a mere possibility of future injury is insufficient to confer standing. *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005).  Rather, the case is justiciable only when the threat is "certainly impending," or "real and immediate." *Id.* (citations and internal quotation marks omitted).  Neither of those benchmarks are satisfied here.  The Amended Complaint alleges no more than the inchoate threat that these regulations might one day be brought to bear on plaintiff, or that they simply offend his sense of right and justice.  There is no allegation to suggest that plaintiff himself is under a present, real, and immediate or imminent threat of being subjected to any of these regulations.  He, thus, lacks constitutional standing to challenge these policies.

Moreover, these allegations fail to establish prudential standing as well.  Plaintiff's complaints regarding these regulations are "shared in substantially equal measure" by all inmates in the CDOC system.  *See Warth*, 95 S.Ct. at 2205.  Such general grievances are best addressed to the legislative, not the judicial, branch.[7]  *Geringer*, 297 F.3d at 1112 (citing *Allen*, 104 S.Ct. at 3325).  Tenth Circuit caselaw confirms that such claims should be dismissed for lack of prudential standing.  *See, e.g.*, *Whitington v. Ortiz*, 307 Fed. Appx. 179, 191 (10th Cir. 2009) (*pro se* prisoner plaintiff "lack[ed] standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself"); *Pruitt v. Simmons*, 1997 WL 689509 at *1 (10th Cir. 1997) ("[P]laintiff has failed to allege that he has suffered or is in immediate danger of suffering a direct injury as a result of the continued existence of this prison regulation");  *Martinez v. Mesa County Sheriff's Department*, 1995 WL 640293 at *1 (10th Cir. 1995) (court is not empowered to

---

[7] Similarly, refusing to countenance such claims is consistent with the court's general duty to defer to prison officials in the administration of matters affecting the day-to-day life of prisoners.  *See Sanaah v. Howell*, 2009 WL 4250147 at *4 (D. Colo. Nov. 23, 2009) (courts must consider the "well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively"), *aff'd*, 384 Fed. Appx. 737 (10th Cir. June 25, 2010).

decide "generalized grievances concerning prison management"); ***Swoboda v. Dubach***, 992 F.2d 286, 289-90 (10th Cir. 1993) (injury in fact not proven where *pro se* prisoner failed to state "specific facts connecting the allegedly unconstitutional conditions [in the prison] with his own experiences").

Accordingly, Claims 5, 5(a), 6(a), 6(b), 6(d), 7, 7(a), 7(f), 8, 9, 10, 11, 11(b), 13, 14, 16, and 18 will be dismissed without prejudice for lack of constitutional and prudential standing.  ***See Harrington v. Wilson***, 242 Fed. Appx. 514, 516 (10th Cir. 2007) (because standing is jurisdictional, dismissal for lack of standing must be without prejudice).

### B.    Colorado Constitution Claims

Claims 2, 4, 6(c), 7, 7(b), 7(e), 7(g), 7(h), 8(a), 9(a), 10(a), 10(b), 11(a), 11(c), 12(a), 13(a), 14(a), 15(a), 16(a), and 16(b) invoke various provisions of the Colorado Constitution, pursuant to which plaintiff apparently intends to broaden his federal claims, as he construes the state constitution as bestowing greater rights than its federal counterpart.  Because section 1983 does not provide a cause of action to enforce the Colorado Constitution, however, these allegations fail to state cognizable claims for relief and must be dismissed.

"Colorado law does not contain the statutory equivalent to 42 U.S.C. § 1983." ***Walker v. Board of Transportation, Regional Transportation District***, 76 F.Supp.2d 1105, 1112 (D. Colo. 1999).  In ***Board of County Commissioners of Douglas County v. Sundheim***, 926 P.2d 545, 549 (Colo. 1996), the Colorado Supreme Court declined to recognize an implied cause of action to enforce the Colorado Constitution under the aegis of a section1983 lawsuit, concluding "that where other adequate remedies exist, no implied remedy is necessary." ***Id.*** at 553.  Based on that decision, at least one court in this district has dismissed claims alleging violations of the Colorado Constitution on the ground that the plaintiff had "adequate remedies available pursuant to § 1983 for violations of the United

States Constitution." *Walker*, 76 F.Supp.2d at 1112.

I see no basis on which to reach a different result here.  Plaintiff's claims pursuant to the Colorado Constitution are complementary to those asserting violations of the United States Constitution.  Section 1983 is more than adequate to address these allegations. Therefore, plaintiff has no implied right of action to bring such state constitutional claims, and they, therefore, must be dismissed without prejudice for lack of subject matter jurisdiction.

### C.    Statute of Limitations

Of the remaining claims – Claims 1, 3, 5(b), 6, 7(c), (d), 12, 15, 15(b), and 17 – I find and conclude that Claims 3, 7(c), 7(d), and 12 are barred by limitations.[8]  Plaintiff commenced this action on November 23, 2009.  "[T]he statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir.), *cert. denied*, 127 S.Ct. 675 (2006).  Thus, any claim that accrued prior to November 23, 2007, is barred by limitations.  "A Section 1983 action 'accrues when facts that would support a cause of action are or should be apparent.'"  *Id.* (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)).

By Claim 3, plaintiff seeks Internet access in order to read a magazine to which he previously subscribed in hard copy, but which is now available only in an online format. This change in available formatting allegedly occurred some time in the summer of 2007. Certainly, plaintiff knew or should of known at that time that he would require Internet access in order to continue to read that publication.  This claim, filed more than two years

---

[8]   Claim 1 states facts occurring in 2008 and 2009, well within the statute of limitations.  Claim 15 describes alleged retaliation occurring after a step 3 grievance dated September 4, 2008, and I construe this date as applicable also to Claim 15(b).  Plaintiff does not provide a time frame for Claims 5(b), 6, or 17, but because he is proceeding *pro se*, I will assume *arguendo* that such claims likewise are within the statute of limitations.

beyond the summer of 2007, is time-barred.

Claims 7(c) and 7(d) implicate CDOC's regulation limiting inmate property to two cubic feet.  The alleged harassing enforcement of the space limitation on inmate property first aggrieved plaintiff, according to his own allegations, at least eight years prior to commencement of this action.  In Claim 12, plaintiff challenges the CDOC policy restricting the photographing of inmates, which by his own admission has been in place during the entirety of the twelve years he has been in administrative segregation.[9]  Attempting to avoid the obvious limitations problems occasioned by these claims, plaintiff invokes the continuing violation doctrine.[10]   I am not persuaded.

The Tenth Circuit has not yet definitively determined whether the continuing violation doctrine applies to section 1983 claims.[11]   *See Wood v. Milyard*, 2011 WL 103029 at *3

---

[9] Plaintiff alleges that the policy "has contributed <u>largely</u> to him finally becoming totally estranged (and forgotten) by the last of his family members two years ago," thus implying that there were relations who fell by the wayside more than two years ago.  *See Johnson v. Johnson County Commission Board*, 925 F.2d 1299, 1301 (10th Cir.1991) ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action.") (citation and internal quotation marks omitted).  Plaintiff, thus, knew of the nature of his injury, if not its full extent, at some point before the two-year statute of limitations began to accrue.

[10] The doctrine clearly is inapplicable to Claim 3, as the discontinuation of the print version of the magazine was a discrete act, not a continuing policy or practice.   *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1183-84 (10th Cir. 2003).

[11] The continuing violation doctrine has its roots in employment discrimination law, and

> permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination.  The doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.

*Houck v. City of Prairie Village, Kansas*, 1998 WL 792154 at *2 (10th Cir. Nov. 13, 1998) (citations and internal quotation marks omitted).  While some federal courts have applied the doctrine in the context of section 1983 claims, *see, e.g.*, *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir.2002); *Cancel v. Mazzuca*, 2003 WL 1702011 at *4 (S.D.N.Y. March 28, 2003), others have been reluctant to do so, *see Sharpe v. Cureton*, 319 F.3d 259, 267-68 (6th Cir.), *cert. denied*, 124 S.Ct. 228 (2003).  Moreover, in *Sharpe*, the Sixth Circuit concluded that the limitations on the doctrine in the Title VII context recognized in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), were equally applicable when the continuing violation doctrine was sought to be used in the section 1983 context.

(10th Cir. Jan. 13,  2011) (slip op.); **Houck v. City of Prairie Village, Kansas**, 1998 WL

792154 at *1 (10th Cir. Nov. 13, 1998).  Assuming *arguendo* that it does, however, "a

continuing violation claim fails if the plaintiff knew, or through the exercise of reasonable

diligence would have known, [he] was being discriminated against at the time the earlier

events occurred." **Wood**, 2011 WL 103029 at *3 (quoting  **Davidson v. America Online,**

**Inc.**, 337 F.3d 1179, 1184 (10th Cir. 2003)).  By plaintiff's own admission, he has been

subject to the policies he now seeks to challenge for many years, and, thus, knew or should

have known of their existence well before November 23, 2007.  Moreover, as plaintiff

simply challenges the policies generally and does not assert any facts showing any

particular instance when the policies were allegedly enforced against him to his detriment,

I cannot find that amendment would be efficacious.  Accordingly, Claims 3, 7(c), 7(d), and

12 will be dismissed.

### D.      Rule 12(b)(6): Failure To State a Claim

Of the claims remaining, I find that, with the exception of Claim 5(b), they fail to state

claims on which relief can be granted and, thus, must be dismissed pursuant to

Fed.R.Civ.P. 12(b)(6).

### 1.      Claim 1:  Access to email

In Claim 1, plaintiff challenges the CDOC policy prohibiting inmates from sending or

receiving e-mail, which he alleges violates his First Amendment rights.  Plaintiff alleges that

the postal service "has cancelled all of its former 'rural delivery' routes nationwide (which

has now made it impossible for plaintiff Rueb to correspond with at least one of his friends

who lives in a rural area of Tennessee . . . )," and that it is "too expensive for him to write"

---

**Sharpe**, 319 F.3d at 267-68.

to his "many friends in foreign countrys [sic]."  Assuming the veracity of these allegations, as I must, I nevertheless find them insufficient to state a viable claim on which relief may be granted.

"Inmates have a First Amendment right to *receive* information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison."  **Jacklovich v. Simmons**, 392 F.3d 420, 426 (10th Cir. 2004) (emphasis added).  Of course, plaintiff's allegations implicate also the *transmission* of information from the prison, as to which there is no such recognized right.  In any event, inmates have no established First Amendment right to access email.  **See, e.g. Holloway v. Magness**, 2011 WL 204891 at *7 (E.D. Ark. Jan. 21, 2011) (First Amendment does not require "that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation.");[12] **Dunlea v. Federal Bureau of Prisons**, 2010 WL 1727838 at *2 (D. Conn. Apr. 26, 2010)  ("[R]esearch reveals no authority supporting a constitutional right to send and receive electronic messages via computer or other electronic device."), **abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel**, 626 F.3d 135 (2nd Cir. 2010); **Glick v. Montana Department of Corrections**, 2009 WL 2959730 at *2 (D. Mont. 2009) ("While [plaintiff] may be inconvenienced by the lack of computer access, inconvenience does not amount to a constitutional violation.");

---

[12] The district court in **Holloway** also noted that "the source of positive obligation on the part of prison systems is not the First Amendment but the Eighth Amendment, which requires only that prisons provide' the minimal civilized measure of life's necessities."  **Holloway**, 2011 WL 204891 at *7 (quoting **Rhodes v. Chapman**, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)) (footnote omitted).

*Yeaman v. Ward*, 2005 WL 2396509 at *11 (W.D. Okla. Sept. 28, 2005) ("DOC policy prohibiting use of the internet is not an unconstitutional abridgement of [p]laintiff's rights under the First Amendment."). Accordingly, Claim 1 fails to state a viable First Amendment claim and will be dismissed.

### 2.  *Claim 5(b): Ban against producing inmate witnesses at disciplinary hearings*

By Claim 5(b), plaintiff alleges that he has been falsely convicted of internal disciplinary violations "over the years" due to the denial of his request to produce "probative inmate witnesses" at disciplinary hearings. A prisoner "has only limited due process rights in a prison disciplinary proceeding," and then "only if the disciplinary proceeding might affect a constitutionally protected liberty interest." *Laratta v. McCormac*, 2010 WL 3341287 at *2 (D. Colo. Aug. 24, 2010). Nevertheless, where those circumstances pertain, the inmate must be afforded, *inter alia*, "the opportunity to call witnesses and present documentary evidence, if such presentation will not be unduly hazardous to institutional safety or correctional goals." *Id.* However, to make out a claim for denial of due process in this context, "the inmate must allege and show how the evidence or testimony would have affected the outcome of the case." *Id.* (citation and internal quotation marks omitted).

The Amended Complaint contains not a single fact setting forth any of the particulars of these allegedly deficient disciplinary hearings. It also fails to describe any evidence or testimony plaintiff allegedly was prevented from presenting, or how such evidence conceivably could have affected the outcome of any particular proceeding. Nevertheless, in light of plaintiff's *pro se* status, it is not entirely "obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010). I, therefore, deny defendants'

motion to dismiss Claim 5(b) and will afford plaintiff an opportunity to amend this claim to attempt to state a viable claim, if he can.

### 3.    Claim 6:  Legality of restitution sanctions

Plaintiff alleges that he "has had over $700 stolen from him via . . . illegal D.O.C. ordered restitution sanctions."   Plaintiff believes the policy permitting restitution as a sanction violates "a property interest under federal law (Equal Protection), derived from the state constitution."  Although no such claim derives from the Equal Protection Clause (and plaintiff may not proceed under the Colorado constitution, as explained *supra*), this claim can be construed to invoke the Fourteenth Amendment's due process protections of property interests, and I, thus, consider it under that rubric.

Plaintiff's claim is similar in all relevant particulars to that raised in ***Smith v. Laporte***, in which the court dismissed as legally frivolous a prisoner's complaint that "the DOC lack[ed] authority to impose monetary restitution as a sanction for a disciplinary offense." 2008 WL 474276 at *1 (D. Colo. Feb. 15, 2008).   The court noted that an order to pay restitution following a prison disciplinary hearing, as to which there was no allegation of a failure of the hearing procedures to comply with the standards of due process, did not state a violation of the Fourteenth Amendment.  ***Id.*** at *2.  The allegations made in Claim 6 are not materially different, and I, thus, perceive no basis on which to reach a contrary result. Accordingly, this claim will be dismissed as well.

### 4.    Claims 15 and 15(b): Retaliatory ban on rented movies

Plaintiff alleges that the defendants named in these claims retaliated against "us" by enacting a complete ban on the rental of movies by prisoners after plaintiff filed a grievance

regarding previous restrictions on the kinds of movies that could be shown.[13]  "It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.'"  ***Gee***, 627 F.3d at 1189 (quoting ***Smith v. Maschner***, 899 F.2d 940, 947 (10th Cir. 1990)).  Plaintiff may make out a claim of retaliation by pleading facts sufficient to plausibly suggest that (1) he was engaged in constitutionally protected activity; (2) defendants' actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  ***Shero v. City of Grove, Oklahoma***, 510 F.3d 1196, 1203 (10th Cir. 2007).  "[W]hen a plaintiff sues an official under ***Bivens*** or § 1983 for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead . . . not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."  ***Dodds v. Richardson***, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting ***Ashcroft v. Iqbal***, – U.S. –, 129 S. Ct. 1937,1949, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted), ***pet. for cert. filed***, 79 U.S.L.W. 3362 (Dec. 1, 2010) (No. 10-741).

Plaintiff claims that defendant Zavaras, the Executive Director of the CDOC, is liable for promulgating the policy banning the showing of rented movies.  This conclusory allegation is clearly insufficient to adequately allege the state of mind required to state a plausible claim for retaliation against a supervisory official.  ***See Peterson v. Shanks***, 149 F.3d 1140, 1144 (10th Cir. 1998) ("[A] plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place.  An inmate claiming

---

[13]  According to the Amended Complaint, DOC regulations automatically ban the showing of NC-17 and X-rated movies, and permit wardens discretion as to whether they will show R-rated movies.

retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights.") (citations and internal quotation marks omitted; emphasis in ***Peterson***).   Even under the liberal pleading standards of Rule 8, the court need not accept as true conclusory allegations unsupported by any factual specifics.   ***Cooper v. Belcher***, 2010 WL 3359709 at *3 (D. Colo. Aug. 25, 2010).   For similar reasons, plaintiff's otherwise unsubstantiated allegation that DeCesaro"plotted" with Zavaras to retaliate against plaintiff is not adequate to state a plausible claim for retaliation sufficient to survive a motion to dismiss.   Finally, although defendants DeCesaro, Gentile, and Hildebrand are alleged to have had knowledge of plaintiff's claims by virtue of their participation in the processing of his grievance, "[t]he denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."   ***Gallagher v. Shelton***, 587 F.3d 1063, 1069 (10th Cir. 2009).

Moreover, plaintiff's challenge to the ban itself fails to implicate the denial of a constitutional right.   "There is no constitutional right to watch television," ***Elliott v. Brooks***, 1999 WL 525909 at *1 (10th Cir. 1999); ***see also Jackson v. Wiley***, 2009 WL 2600361 at *4 (D. Colo. Aug. 21, 2009) (citing cases), and the right to rent and watch movies cannot conceivably be thought to implicate any greater rights.[14]   A viable section 1983 claim presupposes the existence of an underlying federal constitutional or statutory right.   ***See Chapman v. Houston Welfare Rights Organization***, 441 U.S. 600, 603, 99 S.Ct. 1905, 1908, 60 L.Ed.2d 508 (1979); ***Wise v. Bravo***, 666 F.2d 1328, 1331 (10th Cir.1981).   As no such right is implicated by Claims 15 and 15(b), they must be dismissed.

### 5.   Claim 17: Confiscation of "Dungeons & Dragons" paraphernalia

---

[14]  For this same reason, plaintiff's attempt to hold Reid and Jones liable for enforcing the ban in the prison does not state a viable claim for relief, either.

In Claim 17, plaintiff alleges that prison officials confiscated "Dungeons & Dragons" materials mailed to him and asserts that the CDOC policy banning such materials violates his Fourteenth Amendment right of due process.  Such a claim has already been rejected in this circuit.  *See Jacquay v. Maynard*, 1995 WL 77977 at *1 (10th Cir. Feb. 16, 1995). Nothing in the Amended Complaint suggests that a departure from this holding is warranted, and the claim thus must be dismissed.

### E.      Qualified Immunity[15]

Thus, with the lone exception of Claim 5(b), I have concluded that the remainder of the claims asserted in the Amended Complaint must be dismissed.  As the exact parameters of that claim are as yet unknown, I decline at this time to make any conclusive finding regarding the availability of qualified immunity *vel non* as to that claim.  If plaintiff elects to file a second amended complaint as permitted by this Order, the issue may be revisited.

### IV.  CONCLUSION

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Gee*, 627 F.3d at 1195.  Where claims would be barred by limitations, as here, amendment would be futile.  *Id.*  With respect to claims not so barred, and other than Claim 5(b),[16] as explained more fully herein, amendment would not

---

[15]   The docket indicates that defendants Neal, Salazar, and Suthers have not yet been properly served.  These defendants are not implicated by Claim 5(b), the only claim as to which defendants' motion to dismiss will not be granted.

[16]   I note from the docket that plaintiff apparently is contemplating filing another amendment to the complaint adding yet further claims.  (*See* Letter [#124], filed February 18, 2011.)  I specifically advise plaintiff that any proffered amended complaint in this lawsuit that seeks to add claims or parties or allege facts beyond those relevant to make out a viable claim as to Claim 5(b) may not be filed without leave of court. FED. R. CIV. P. 15(a)(2).

remedy the legal deficiencies inherent therein.  Moreover, as the only defendants implicated by Claim 5(b) are Zavaras, Burbank, DeCesaro, Jones, Reid, and Richter, the remaining defendants will be dropped as named parties to this action.

**THEREFORE, IT IS ORDERED** as follows:

1.  That having the consent of the United States Magistrate Judge, the **Reference** [#53] filed April 22, 2010, of defendants' motion to dismiss is **WITHDRAWN**;

2.  That **Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 24)** [#51], filed April 21, 2010, is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    That Claims 5, 5(a), 6(a), 6(b), 6(d), 7, 7(a), 7(f), 8, 9, 10, 11, 11(b), 13, 14, 16, and 18 are **DISMISSED WITHOUT PREJUDICE** for lack of standing;

    b.    That Claims 2, 4, 6(c), 7, 7(b), 7(e), 7(g), 7(h), 8(a), 9(a), 10(a), 10(b), 11(a), 11(c), 12(a), 13(a), 14(a), 15(a), 16(a), and 16(b) are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

    c.    That Claims 3, 7(c), 7(d), and 12 are **DISMISSED WITH PREJUDICE** as time-barred;

    d.    That Claims 1, 6, 15, 15(b), and 17 are **DISMISSED WITH PREJUDICE** for failure to state claims on which relief may be granted;

3.  That in all other respects, the motion is **DENIED**;

4.   That defendants, Eugene Atherton, Robert Allen, C. Barr, Jim Gentile, Sue Grisenti, M. Hildebrand, Carl Holditch, C. May, Donice Neal, R. Olivett, C. Roy, Ken Salazar, John Suthers, G. Vendetti, D. Williams, and H. Williams, are **DROPPED** as named parties to this lawsuit, and the case caption **AMENDED** accordingly; and

5.  That plaintiff **MAY FILE** a Second Amended Complaint, limited to Claim 5(b) only

(*see supra*, note 15), by no later than **April 25, 2011**.

Dated March 7, 2011, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge